IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Action No. RDB-19-463 |
| VANESS KELLY, | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM ORDER**

On November 5, 2020, Defendant Vaness Kelly ("Defendant" or "Kelly") pled guilty, pursuant to a plea agreement, to one count of conspiracy to distribute and possess with intent to distribute 28 grams or more of crack cocaine, in violation of 21 U.S.C. § 846. (ECF No. 91.) On April 8, 2021, this Court sentenced Kelly to 96 months with credit for time served in federal custody since September 18, 2019, to be followed by a period of five years supervised release. (ECF No. 130.) As of the date of this filing, Kelly is 34-years-old and incarcerated at United States Penitentiary Canaan ("USP Canaan") in Waymart, Pennsylvania, with a projected release date of June 1, 2027. *See Find an Inmate*, FED. BUREAU OF PRISONS, available at https://www.bop.gov/mobile/find_inmate (last accessed July 22, 2025; search by register number: 64974-037).

Instantly before the Court are two pending *pro se* post-conviction motions: (1) a Motion for Compassionate Release (ECF No. 207), filed November 3, 2023; and (2) a Motion to Reduce Sentence Pursuant to Amendment 821 to the United States Sentencing Guidelines (ECF No. 212), filed January 8, 2024. The Court has reviewed Kelly's submissions and finds that no response from the Government is necessary, nor is a hearing necessary. *See* Local Rule

1

105.6 (D. Md. 2025). For the reasons that follow, Kelly's *pro se* Motion for Compassionate Release (ECF No. 207) is DENIED; and (2) his *pro se* Motion to Reduce Sentence Pursuant to Amendment 821 to the United States Sentencing Guidelines (ECF No. 212) is DENIED.

## BACKGROUND

From January 1, 2019 and continuing until September 18, 2019, Defendant Vaness Kelly and various co-conspirators distributed crack cocaine to retail customers from an open-air drug "shop" that operated in Baltimore City, Maryland. (ECF No. 91 at 10.) This conspiracy involved Kelly's obtainment of bulk quantities of cocaine from various suppliers, oversight of the preparation and packaging of the crack cocaine for retail sale, and selling of the crack cocaine to retail customers. (*Id.*)

On eight occasions between May 23, 2019 and July 31, 2019, Kelly personally sold crack cocaine to either a confidential informant working on behalf of the Bureau of Alcohol, Tobacco, Firearms and Explosive ("ATF") or an undercover ATF agent, which amounted to a collective 140 grams of crack cocaine. (*Id.*) During several of his interactions with the undercover ATF agent, Kelly also attempted to purchase firearms and a silencer, telling the undercover ATF agent that he had a "situation" he wanted to "eliminate." (*Id.* at 1–2.)

On September 18, 2019, law enforcement executed a search and seizure warrant at Kelly's home in Baltimore, where he was found. (*Id.* at 2.) The search of the apartment yielded a pistol, approximately 13 grams of heroin, and a packaging material consistent with narcotics sale. (*Id.*)

On October 2, 2019, a grand jury returned a one count Indictment, charging Kelly and three others with conspiracy to distribute and possess with intent to distribute 28 grams or

more of cocaine base, in violation of 21 U.S.C. § 846.  (ECF No. 30.)  On November 5, 2020, Kelly pled guilty, pursuant to a plea agreement, to the offense charged.  (ECF No. 91.)

Kelly's Sentencing Guideline range was 151 months to 188 months of imprisonment, based on an offense level of 29 and a criminal history category of VI.  (ECF No. 106.)  Pursuant to 21 U.S.C. § 841(b)(1)(B)(iii), the minimum term of imprisonment was 5 years and the maximum term is 40 years, and pursuant to his Rule 11(c)(1)(C) plea, the parties agreed to a sentence between 84 months and 132 months.  (ECF No. 91.)  Kelly sought 84 months, (ECF No. 125), and the Government requested 120 months of imprisonment.  (ECF No. 128.)  On April 8, 2021, this Court sentenced Kelly to 96 months with credit for time served in federal custody since September 18, 2019, to be followed by a period of five years supervised release.  (ECF No. 130.)

Kelly is now 34-years-old and incarcerated at USP Canaan in Waymart, Pennsylvania, with a projected release date of June 1, 2027.  *See Find an Inmate*, FED. BUREAU OF PRISONS, available at https://www.bop.gov/mobile/find_inmate (last accessed July 22, 2025; search by register number: 64974-037).  On November 3, 2023, Kelly filed a *pro se* Motion for Compassionate Release (ECF No. 207).  On January 8, 2024, he filed a *pro se* Motion to Reduce Sentence Pursuant to Amendment 821 to the United States Sentencing Guidelines (ECF No. 212).  These motions are ripe for review.

## ANALYSIS

As Defendant Vaness Kelly has filed his motions *pro se*, his motions and related filings will be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

I.  **Motion for Compassionate Release (ECF No. 207)**

Through his *pro se* motion filed at ECF No. 207, Kelly seeks "compassionate release." The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison. Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with the Court. With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a reduction in sentence. The Act now permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* § 3582(c)(1)(A). Once these mandatory conditions are satisfied, a Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" warranting a reduction and after weighing the factors presented in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A); *see United States v. Malone*, 57 F.4th 167, 194 (4th Cir. 2023).

**A. Administrative Exhaustion**

One of the mandatory conditions laid out in 18 U.S.C. § 3582(c)(1)(A) requires a defendant to demonstrate that "[he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C § 3582(c)(1)(A). While Kelly did not provide documentation of exhaustion

4

with his motion, the Office of the Federal Public Defender provided documentation as an exhibit to its notice that it would not be supplementing Kelly's *pro se* motion or asking for appointment of counsel in this matter. (*See* ECF No. 211.) On November 13, 2023, Defendant asked the Bureau of Prisons to act on his behalf, requesting compassionate release due to severe pain resulting from being stabbed in the neck while incarcerated,[1] mental health issues, and better care being available outside of prison, as well as family need. (ECF No. 211-1.) The Court therefore finds that Kelly has exhausted his administrative remedies.

### B. Extraordinary and Compelling Reasons

The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A)(i). 28 U.S.C. § 994(t). While the district court holds broad discretion in analyzing extraordinary and compelling reasons, it must remain consistent with "applicable policy statements issued by the Sentencing Commission." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021); *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)). As the United States Court of Appeals for the Fourth Circuit noted, there had previously been "no applicable policy statements to reference;" however, that changed on November 1, 2023. *See United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024); *United States v. Robinson*, No. ELH-18-17, 2024 U.S. Dist. LEXIS 81817 at *13 (D. Md. May 6, 2024).

Prior to the November 1, 2023 amendment, the relevant policy statement codified in

---

[1] The Court observes that the Presentence Investigation Report notes that this incident occurred in 2010. (ECF No. 106 ¶ 57.)

U.S.S.G § 1B1.13 read: "Upon motion of *the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment." U.S.S.G. § 1B1.13 (2021) (emphasis added). The Fourth Circuit interpreted this language to not include defendant-filed motions. *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) ("When a defendant exercises his . . . right to move for compassionate release on his own behalf, § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of the district courts."). Thus, district courts could "consider any extraordinary and compelling reason for release." *Id.* at 284 (citation omitted).

Congress amended this policy statement to read: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment." U.S.S.G. § 1B1.13 (2023) (emphasis added). Therefore, the current policy statement, which became effective November 1, 2023, applies to defendant-filed motions. *Robinson*, 2024 U.S. Dist. LEXIS 81817, at *14; *Davis*, 99 F.4th at 654; *Taylor*, 2023 U.S. Dist. LEXIS 222428, at *9–10. The updated language of § 1B1.13 conflicts with *McCoy*'s conclusion—which was based on the pre-amendment language—that the policy statement does not apply. *Robinson*, 2024 U.S. Dist. LEXIS 81817 at *14–15. The amended version of § 1B1.13 consequently does restrict district courts to follow its policy statement. *Id.*

U.S.S.G. § 1B1.13(b)(1)–(6) identifies six possible circumstances that viewed separately or together may establish "extraordinary and compelling reasons" for a sentence reduction. These reasons include:

    (1) a serious medical circumstance of the defendant;
    (2) a defendant who is 65 years old that suffers from serious health deterioration and has served either 10 years or 75 percent of his or her term;
    (3) the death or incapacitation of an immediate family member;

6

(4) the defendant being a victim of abuse while in custody;
(5) other reasons of similar gravity as (1)–(4); and
(6) unusually long sentence if the defendant has served at least ten years.

U.S.S.G. § 1B1.13(b)(1)–(6).

Through his Motion for Compassionate Release (ECF No. 207), Kelly notes his rehabilitation while incarcerated and reflects that he and his family "have lost a lot due to [his] incarceration" and other aggravating factors, such as the COVID-19 pandemic, financial instability, and mental health issues. (*Id.* at 1.) He further notes that he has lost many relatives, including his mother, brother, and grandparents, as well as close friends, and that he struggles from mental health and substance issues for which he seeks help. (*Id.*) He further notes regret for his past life, notes the circumstances which led him to make poor decisions, and states that he "take[s] full responsibility of [his] actions" and is eager to "better [his] life for [him]self," as well as "for [his] kids and people." (*Id.* at 1–2.) He notes that he would like to mentor kids upon his release. (*Id.*) In his letter to the warden dated November 13, 2023, Defendant requested compassionate release due to severe pain resulting from being stabbed in the neck, mental health issues, the availability of better care being available outside of prison, and family need. (ECF No. 211-1.) The Court will address these proffered reasons in accordance with the Commission's policy statement below.

### 1. Medical Circumstances of the Defendant

Through his motion filed with this Court (ECF No. 207), Kelly notes that he had to get medical attention after he contracted COVID-19 while incarcerated and that he struggles from mental health and substance issues. (*Id.* at 1.) In his letter to the warden (ECF No. 211-1), Kelly notes that, in addition to his mental health struggles, he suffers from severe pain

7

resulting from being stabbed in the neck, and that better care is available outside of prison.

Medical circumstances of a defendant can constitute extraordinary and compelling reasons where a defendant is "suffering from a terminal illness," U.S.S.G. § 1B1.13(b)(1)(A); where medical conditions "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover," *id.* § 1B1.13(b)(1)(B); where a "defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," *id.* § 1B1.13(b)(1)(C); or where a defendant faces imminent risk of being affected by an infectious disease or an ongoing public health emergency under certain circumstances, *id.* § 1B1.13(b)(1)(D).

Preliminarily, the Court notes that Kelly failed to provide any evidence—namely medical records—to support his claim that medical conditions justify his early release. Nevertheless, the Court observes that none of Kelly's claimed conditions are terminal. Likewise, he has not demonstrated that his medical circumstances substantially diminish his ability to provide self-care in a correctional facility. While Kelly suggests that he would fare better and receive better care if living at home, that is not the relevant inquiry under § 1B1.13(b)(1)(C). Lastly, while Kelly notes he required medical treatment after contracting COVID-19 while incarcerated, this falls short of the standard under § 1B1.13(b)(1)(D).

### 2. Family Circumstances of the Defendant

Through his motion (ECF No. 207), Kelly notes that his family "have lost a lot due to [his] incarceration" and other aggravating factors, and further notes the loss of many relatives,

(*id.* at 1), though the Court observes that those relatives died prior to his arrest for the instant offense, (ECF No. 106 ¶¶ 51–53). Family circumstances of a defendant can constitute extraordinary and compelling reasons in the following circumstances:

> (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3).

While the PSR indicated that Kelly has four children, three of whom are minors, and further indicated that all four children lived with their respective mothers, (ECF No. 106 ¶ 54), Kelly does not suggest that either of the caregivers caring for his minor children has died or is incapacitated, nor does he suggest that his non-minor child is incapable of self-care because of a mental or physical disability or medical condition. Nor does he suggest circumstances like those set forth in § 1B1.13(b)(3)(B), (C), or (D). While the PSR reflected that Kelly had maintained a relationship from 2018 to 2021, it further reflected that he had never been married and that his mother had passed away in 2011. (*Id.* ¶¶ 51, 54.) Simply stated, while the Court applauds Kelly for his desire to help his children and their caregivers, he has not

9

presented any admissible evidence showing that his family members are incapacitated or lack other caregivers.

### 3. Other Reasons of Similar Gravity as U.S.S.G. § 1B1.13(b)(1)–(4)

Kelly also cites his rehabilitation while incarcerated. (ECF No. 207 at 1.) U.S.S.G. § 1B1.13(d) provides:

> Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

The Court commends Kelly for his desire to better himself and his accomplishments towards that end. The Court further commends Kelly for his noted desire to mentor kids upon his release. Nevertheless, the Commission has explicitly noted that "rehabilitation of the defendant is not, by itself," a sufficient reason to grant a motion for compassionate release, but it "may be considered in combination with other circumstances." As such, Kelly's post-conviction rehabilitation—while applaudable—does not suffice on its own as an extraordinary and compelling reason for early release. *Davis*, 99 F.4th at 659.

### C. Section 3553(a) Factors

Even if Kelly had identified an extraordinary and compelling reason for a sentence reduction, the Court would have to consider the applicable factors in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). These factors require this Court to consider: (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for

10

rehabilitative services; (5) the applicable guideline range; and (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants.  18 U.S.C. § 3553(a).

While Kelly does not address these factors in his motion, the Court finds it prudent to address the applicable guideline range, which cautions strongly against a sentence reduction. Kelly's Sentencing Guideline range was 151 months to 188 months of imprisonment, based on an offense level of 29 and a criminal history category of VI, which reflected Kelly's unfortunate but repeated association with drug trafficking and firearms over a decade into his adult life.  (ECF No. 106.)  While 21 U.S.C. § 841(b)(1)(B)(iii) provided that the offense of conviction would carry a minimum term of 5 years imprison, the parties agreed to a sentence well below the Guidelines range—between 84 months and 132 months, (ECF No. 91), and the Court's sentence—96 months imprisonment, (ECF No. 130)—also fell well below the Guidelines range.[2]

Accordingly, Defendant Vaness Kelly's *pro se* Motion for Compassionate Release (ECF No. 207) is DENIED.

### II.     Motion to Reduce Sentence Pursuant to Amendment 821 to the United States Sentencing Guidelines (ECF No. 212)

Through his *pro se* motion filed at ECF No. 212, Kelly moves for a reduction of his sentence pursuant to Amendment 821 of the United States Sentencing Guidelines.  Ordinarily,

---

[2] While Kelly received a longer sentence than his codefendants, of the four Defendants, Kelly was involved in the most significant drug sales to investigators, was found in possession of a firearm, and was the only Defendant who sought to purchase firearms from the undercover ATF agent.  (ECF No. 106.)  Each of his codefendants—Anthony Ferguson, Jamie Barnes, and David Riley—also pled guilty, though only Ferguson—who is Kelly's maternal half-brother—was subject to the mandatory minimum of five years pursuant to 21 U.S.C. § 841(b)(1)(B)(iii).  (ECF Nos. 99 (Ferguson), 158 (Barnes), 183 (Riley).)  Ferguson agreed to a sentence of 72 to 108 months, (ECF No. 99), and while he was sentenced to 72 months, (ECF No. 148), he was granted clemency on January 22, 2025 after serving only 40 months' imprisonment, (ECF No. 233).  Barnes agreed to a sentence of 36 to 60 months, (ECF No. 158), and was sentenced to 36 months, (ECF No. 175).  Riley agreed to a sentence of 48 to 72 months, (ECF No. 183), and was sentenced to 48 months.

a federal court may not "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). This "rule of finality," however, is subject to a few narrow exceptions," *Freeman v. United States*, 564 U.S. 522, 526 (2011), such as 18 U.S.C. § 3582(c)(2), which permits a court to lower the sentence of a defendant who was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," if a reduction is consistent with the sentencing factors in 18 U.S.C. § 3553(a) and the Sentencing Guidelines.

Under § 3582(c)(2), a defendant may be eligible for relief if an amendment to the Sentencing Guidelines has been made retroactively applicable. *Dillon v. United States*, 560 U.S. 817, 826 (2010). One such retroactive amendment is Amendment 821 to the Sentencing Guidelines. Amendment 821 is a multi-part amendment. As relevant here, Part A[3] limits the criminal history impact of "status points"—i.e., criminal history points assigned to defendants for committing an offense while under a criminal justice sentence—on a defendant's criminal history calculation. For defendants sentenced before the amendment, Part A instructs courts: (1) to remove one status point for individuals with seven or more criminal history points and (2) to eliminate status points for those with six or less criminal history points. *See* U.S.S.G. § 4A1.1(e).

While Kelly received two status points because he committed the offense of conviction while under probation supervision, (ECF No. 106 at 11), he is ineligible for a sentence reduction under Amendment 821. While his total criminal history score is now 13, the

---

[3] Part B of Amendment 821 provides a mechanism for certain zero-point offenders—i.e., criminal defendants with no criminal history points—to obtain a two-level reduction of their offense level, provided the defendant also meets each of the criteria enumerated in the amendment. U.S.S.G. § 4C1.1. Part B is unavailing to Kelly, as he was not a zero-point offender.

12

sentencing table in U.S.S.G. Chapter 5, Part A provides that a criminal history score of 13 establishes a criminal history category of VI. In other words, Kelly's Sentencing Guideline range remains 151 months' to 188 months' imprisonment, based on an offense level of 29 and a criminal history category of VI.[4] Accordingly, Kelly's *pro se* Motion to Reduce Sentence Pursuant to Amendment 821 to the United States Sentencing Guidelines (ECF No. 212) is DENIED.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED this 23rd day of July, 2025, that: Defendant Vaness Kelly's *pro se* Motion for Compassionate Release (ECF No. 207) is DENIED; and (2) his *pro se* Motion to Reduce Sentence Pursuant to Amendment 821 to the United States Sentencing Guidelines (ECF No. 212) is DENIED.

/s/
Richard D. Bennett
United States Senior District Judge

---

[4] Pursuant to his plea agreement, Kelly received a sentence—96 months' imprisonment—that was well below the range prescribed by the sentencing guidelines and within the agreed to range by the parties—84 months to 132 months imprisonment.